UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

DEBRA POWELL, an individual,

        Plaintiff,

v.

JOHN DENNIS RASMUSSEN, an individual, COLTON RASMUSSEN, an individual, IAN RASMUSSEN, an individual, and HEIDI RASMUSSEN, an individual,

        Defendants.

TERRA-MAGIC, INC., an Oregon corporation, and TERRA-MAGIC SEEDS, LTD., an Oregon corporation,

        Nominal Defendants

Case No. 2:19-cv-1077-JR

ORDER

1 -   ORDER

Russo, Magistrate Judge:

Following a fair value hearing pursuant to Or. Rev. Stat. § 60.952(6) conducted over several days in August and September 2021, and submission of written closing arguments submitted in October, this Court issued its Findings of Fact and Conclusions of law determining plaintiff was entitled to $4,765,261.50 to effectuate the election to purchase her shares in the TMI entities. The Court required plaintiff to submit a proposed judgment.

Plaintiff submitted a proposed judgment via letter to the Court in January 2022; defendant submitted objections via letter in February 2022; and plaintiff submitted a response. The Court resolves defendant's objections here and issues a limited judgment in a separate filing.

A.    Assignment of Derivative Claims

In the Findings of Fact and Conclusions of Law, the Court declined to determine the value of the soft assets in the form of malfeasance claims alleged by plaintiff based on the actions of defendant Colton Rasmussen allegedly acting in concert with purchasing shareholder defendant Dennis Rasmussen. The Court found the claims were appropriately recoverable as ordinary tort claims presented to a jury. In the proposed judgment, plaintiff seeks to effectuate this finding by assigning the derivative claims from the Terra Magic entities to plaintiff granting her standing to pursue the claims before a jury and the right to retain any recovery. Defendant objects asserting such provision circumvents the purpose of Or. Rev. Stat. § 60.952 and violates the rule that to pursue derivative claims, plaintiff must retain ownership of shares in the Terra Magic entities for the duration of the litigation.

The parties agreed to a hard asset valuation method to determine the fair value of the shares in the Terra Magic entities. The attempt by plaintiff to show the affect of the alleged torts by a third parties (primarily defendant Colton Rasmussen) acting in concert with Dennis Rasmussen

2 -   ORDER

was stymied by the scope of the fair value hearing and the limited ability to address the elements of those claims. Nonetheless, there was substantial evidence related to conversion of assets and unjust enrichment allegedly committed by Colton Rasmussen. The primary effect appears to have been damage to plaintiff in the form of reduced distributions to plaintiff during the operation of the Terra Magic entities. Allowing Dennis Rasmussen to escape his role in the purported conversion of assets by acting in an alleged conspiracy with a non-shareholder party would be an inequitable result. The litigation short cut provided by the Oregon Legislature in providing for the election to purchase in lieu of a trial seeking shareholder remedies did not foreclose plaintiff from pursuing the malfeasance claims, in this instance, given that the Legislature contemplated the Court's ability to craft equitable remedies. See, e.g., Or. Rev. Stat. § 60.952(5)(a)(A) (In determining fair value the Court shall consider any impact resulting from action giving rise to the shareholder suit); Or. Rev. Stat. § 60.952(3) (The remedies for aggrieved shareholders include equitable remedies).

The impact of Colton Rasmussen's alleged tortious conduct, purportedly performed in Concert or aided and abetted by Dennis Rasmussen, appears to have had an impact on the soft assets of the tort claims available to the Terra Magic entities. The value of these claims was not readily calculable in the specific context of a fair value hearing regarding the hard asset value of the shares in Terra Magic. Moreover, expanding the scope of the fair value hearing to include the value of such soft assets would have defeated the purpose of the streamlined approach of the election to purchase in lieu of a shareholder suit. The Court would have had to first conduct a trial on the stayed claims to determine their value and Dennis Rasmussen's culpability in the alleged conspiracy which is not permitted once an election to purchase the shares is made. Accordingly,

3 -   ORDER

the Court, in exercising its equitable powers, will permit plaintiff to pursue the claims to the extent she can show any damages she suffered.

Regarding the issue of the ability of the selling shareholder to pursue derivative claim in closely held corporations, as here, the Court may allow plaintiff to pursue the derivative claims as direct claims. Generally, in order to bring a derivative suit, a shareholder must own stock at the time of the alleged wrong and retain ownership for the duration of the litigation. See, e.g., Lewis v. Chiles, 719 F.2d 1044, 1047 (9th Cir.1983) (interpreting Oregon law regarding shareholder standing). However, where the failure to hold a continuing interest is the result of corporate action to which the suing former shareholder did not acquiesce, the aggrieved former shareholder has standing to pursue the claims especially where those claims include allegations of wrongdoing by the other shareholders or their acquiescence in the wrongdoing. See Noakes v. Schoenborn, 116 Or. App. 464, 470, 841 P.2d 682, 686 (1992). While defendant argues plaintiff constructively acquiesced in the sale of her shares to defendant Dennis Rasmussen by bringing the shareholder claims knowing that Dennis had the option to elect to purchase her shares in lieu of litigation, the Court declines to find plaintiff voluntarily relinquished her shares by bringing this action. Indeed, plaintiff objected to the election arguing defendant lacked the ability to pay for her shares.

Moreover, in a closely held corporation, minority shareholders may bring a direct action, rather than a derivative action, if they allege harm to themselves distinct from harm to the corporation or a breach of a special duty owed by the defendant to the shareholders. Id. at 471, 841 P.2d at 686. As the Court noted in its Findings of Fact and Conclusions of Law, defendant Dennis Rasmussen breached fiduciary duties owed to plaintiff in exercising control over the Terra Magic entities which form part of the basis for plaintiff's conspiracy claims. Accordingly, plaintiff may maintain a direct action for the malfeasance claims and present them to a jury.

4 -   ORDER

Because plaintiff may maintain a direct action for the malfeasance claims, she is entitled to present the claims to a jury against Colton Rasmussen and the other non-shareholder defendants for direct damages suffered. In addition, given the allegations of wrongdoing on the part of Dennis Rasmussen in concert with the other defendants and in breach of his fiduciary duties, plaintiff may maintain an action against him to the extent she suffered damage directly. Accordingly, defendant Dennis Rasmussen's objection to the proposed judgment assigning the malfeasance claims to plaintiff is denied.[1]

B.     Tax Consequences

During the fair value hearing, plaintiff testified she would pay the taxes resulting from the sale of Terra Magic assets necessary to pay for her shares in the entities. The proposed judgment initially included a provision that plaintiff shall be responsible for the payment of any state or federal taxes associated with disbursement to her of the fair value of shares in the Terra Magic entities. However, the amended proposed judgment does not include this provision and defendant objects.

Plaintiff asserts the parties were mistaken as to the tax consequences of the sale of the assets assuming that the tax regulations permitted allocation of all the gain and basis of the assets to her. But the parties now understand that both must be allocated equally and as a consequence Dennis would receive a windfall of $2.5 million in additional tax basis if the judgment is entered as originally written. The value of this benefit appears to range between approximately $832,000 and $1,175,000 depending on whether the basis is utilized upon a future sale of the company or via ordinary operating losses over the years. Defendant Dennis Rasmussen asserts plaintiff should

---

[1] Defendant requests the Court dismiss all claims except the Or. Rev. Stat. § 60.952 claim against him with prejudice. Based on the above analysis, the Court declines to dismiss the other remaining claims against defendant Dennis Rasmussen.

5 -   ORDER

be required to return an additional $632,705 to him, which allows him to recognize the entire benefit of the additional tax basis funded by plaintiff's payment of the tax bill related to the sale of assets.

Plaintiff notes the election to purchase was a cash offer and had Dennis Rasmussen had the ability to pay for plaintiff's share in cash, this tax scenario would have been avoided. Plaintiff's testimony was based on an understanding that the tax would correspond to any payment she received and did not contemplate the benefit flowing from the basis of the assets Dennis Rasmussen will realize in the future. The Court agrees that given defendant's conduct and the necessity to sell assets due to his inability to pay cash for plaintiff's shares, equity demands that the tax liability resulting from the sale of assets account for this benefit. As such, defendant's objection is denied. The allocation of tax as submitted by plaintiff's CPA Cindy Heuberger appropriately allocates the full tax liability, as contemplated by plaintiff's testimony, on the sale of shares worth $4.765 million while accounting for the approximately $2.5 million basis benefit accruing to Dennis as a result of the sale.[2]

C.   Scope of Custodian's Authority

Defendant Dennis Rasmussen objects to the appointment of plaintiff's chosen custodian and extent of proposed control provided by the proposed judgment. Defendant also objects to the proposed compensation agreement. Defendant Dennis Rasmussen proposes retaining control of the Terra Magic entities for six months so that he can arrange for the sale of assets and funding and, after that time period, a custodian of defendant's choosing, in an advisory capacity, can be appointed under terms he has negotiated.

---

[2] Ms. Heuberger did not have the basis information when calculating the tax liability and thus it simply allocates the tax based on the gain.

6 -   ORDER

Given the level of misconduct demonstrated during the fair value hearing, the Court declines defendant's invitation to leave control of the asset sale in his hands. As noted above, defendant's inability to pay cash to effectuate his election to purchase plaintiff's shares has resulted in the need to sell assets to fund the purchase. The objection to the custodian provisions of the proposed judgment is denied.

D.     Requests for Clarification

1.     Custodian Costs

Defendant request the Court reduce the amount of the judgment by the amount of any commission payable to a third-party broker or the custodian for the sale of the assets used to pay the judgment. Again, as noted, the sale of assets was necessitated by defendant's inability to pay cash to effectuate his election. Although the election transferred this case from a typical shareholder remedies case to the election provisions, the custodian provision relating to shareholder remedies provides the best guidance given defendant's inability to fund the purchase without selling assets and in light of his breach of fiduciary duties. The statute provides that in a shareholder proceeding for remedies, "the court shall allow reasonable compensation to the custodian, provisional director, appraiser or other such person appointed by the court for services rendered and reimbursement or direct payment of reasonable costs and expenses. Amounts described in this subsection shall be paid by the corporation." Or. Rev. Stat. § 60.952(7). Accordingly, the Court declines defendant's request and approves the custodial provisions and agreement in the proposed judgment. In addition, because plaintiff's preferred custodian carries substantial liability insurance, the Court declines to require the posting of a bond.

2.     Transfer of Shares

Defendant requests the judgment include a provision that plaintiff warrant that her shares are delivered free and clear of encumbrances. The request is granted.

3.     Resignation as Director

Defendant requests that plaintiff resign as director of the Terra Magic entities. The request is granted to the extent that plaintiff shall resign as director upon delivery of the shares and payment in return.

4.     TMS LLC

Defendant requests authorization to execute a special warranty deed on behalf of Terra Magic Seeds LLC, to Terra Magic Seeds, Ltd. The request is granted.

## CONCLUSION

With the above changes to the proposed judgment, the Court will enter, under separate filing, a limited judgment awarding fair value and liquidating assets.

DATED this 5th day of April, 2022.

    /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

8 -   ORDER